IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-197-FL

| | |
|---|---|
| LISA KAYE NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Lisa Kaye Nichols ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-14] be denied, Defendant's Motion for Judgment on the Pleadings [DE-16] be granted, and the final decision of the Commissioner be affirmed.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on November 8, 2011 (Tr. 67-68, 117-18), alleging disability beginning March 15, 2010 (Tr. 199, 203). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 67-68, 117-18, 132.) On February 28, 2014, a hearing was held before Administrative Law Judge Richard L. Vogel ("ALJ"), who issued an unfavorable ruling on April

4, 2014. (Tr. 40-41, 45.) On July 2, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.     Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

**II.    Disability Determination**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial

2

gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 15, 2010. (Tr. 33.) Next, the ALJ determined Plaintiff had the following severe impairments: "fibromyalgia, osteoarthritis, and degenerative joint disease." (*Id.*) The ALJ also found that Plaintiff's status post hip replacement, carpal tunnel syndrome, and depression were non-severe impairments. (Tr. 33-35.)

However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35-37.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform "the full range of sedentary work." (Tr. 37.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 38.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work as a loan officer. (Tr. 40.)

## IV. Plaintiff's Contention

Plaintiff asserts that the ALJ erred in failing to give proper weight to her treating physician's medical opinion that Plaintiff had significant mental impairments. An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ must further "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (Jul. 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b) & (c), 416.927(b) & (c); *see also Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *16 (E.D.N.C. Dec. 30, 2014). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Controlling weight will be

4

given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig,* 76 F.3d at 590.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the treating physician's opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

On November 2, 2012, Plaintiff's treating physician, Dr. Gerry, provided a medical source statement opining that Plaintiff was moderately impaired in her abilities to: (1) understand, remember and carry out very short and simple instructions; (2) understand, remember and carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept supervision. (Tr. 345.) Dr. Gerry opined that Plaintiff was extremely impaired in her ability to maintain attention and concentration and that Plaintiff was not significantly impaired in her ability to work with others and ability to get along with coworkers. (Tr. 345.) Dr. Gerry further stated, "[Plaintiff] would be unable to consistently work a full 8 hours/day and could clearly not guarantee that she could work 40 hours each and every week. Her physical status in addition to her medications would not allow her to work at all." (Tr. 345.)

5

The ALJ addressed Dr. Gerry's opinion, giving it little weight because his "opinion regarding [Plaintiff's] mental limitations is inconsistent with his own treatment notes," as well as the "objective findings of other treating and examining physicians." (Tr. 35, 39.) Although the ALJ did not directly address Dr. Gerry's diagnosis of Plaintiff's anxiety, he addressed Dr. Gerry's diagnosis of Plaintiff's insomnia, the fact that Plaintiff received ongoing treatment for panic attacks, and that Plaintiff had been treated for anxiety for the past ten years. (Tr. 38, 39.) The ALJ also noted that Plaintiff's treatment of her panic attacks have been conservative in nature.

Dr. Gerry appears to have been Plaintiff's primary care physician. He treated her for a variety of ailments, such as fibromyalgia, degenerative disc disease, essential tremor, panic attacks, and insomnia. (Tr. 292-307, 322-27, 338-39, 344-47, 382-86.) However, there are no detailed notes concerning Plaintiff's anxiety, panic attacks, or insomnia. Dr. Gerry notes that she was prescribed Xanax but does not indicate that Plaintiff's mental condition limited any of her functional abilities. (Tr. 292-307, 322-27, 338-39, 344-47, 382-86.) Additionally, during the consultative psychological evaluation, Plaintiff acknowledged that if she was "free from pain she would be able to work." (Tr. 317.) Thus, Plaintiff's own statements support the ALJ's finding that Plaintiff was not limited by her mental condition.

The ALJ adequately addressed the available medical evidence regarding Plaintiff's anxiety and gave due consideration to Dr. Gerry's opinion in determining Plaintiff's RFC. Accordingly, Plaintiff's assignment of error should be overruled.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-14] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-16] be GRANTED and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 25, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 8th day of July 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge